## CADILLAC MOTOR CAR COMPANY v. SOUTHERN MOTOR COMPANY.

Western Section.   December 20, 1927.

Petition for Certiorari denied by Supreme Court, March 3, 1928.

1. **Contracts. Contract construed and held breached by plaintiff.**

In an action by an automobile company to recover from a distributer a certain account where the defendant set up a counterclaim for commissions due on the sale of cars, and the evidence showed that if defendant sold over one hundred cars it was to get an extra one per cent commission and further showed that the defendant had ordered sufficient cars to entitle it to the commission but plaintiff had refused to furnish the cars because defendant would not accept old model cars, held that under the contract it was the duty of the plaintiff to furnish the number of cars ordered by the defendant.

2. **Contracts. Party will be excused from performing contract if performance is impossible.**

In an action on a contract to furnish automobiles held that if the plaintiff had shown that its factory did not produce sufficient cars to fill orders of

defendant that it would have been excused from performing the contract, but the evidence did not show that plaintiff could not furnish the cars and it was not excused from failing to furnish the cars ordered.

Appeal from Chancery Court, Shelby County; Hon. D. W. De-Haven, Chancellor.

Affirmed.

Miles, Waring & Walker, of Memphis, for appellant.

Bryan & Brode, of Memphis, for appellee.

SENTER, J. The complainant, Cadillac Motor Car Company, filed its original bill in this cause against the Southern Motor Company, and S. H. Butler, individually, seeking to recover from the defendants the sum of $965.04, the amount of its account against the defendants. The suit was dismissed as to S. H. Butler. The defendant Southern Motor Car Company filed an answer in which it denied that it was indebted to the complainant, but further insisted that it had a counterclaim against the complainant for the sum of $2,607.88, representing that the complainant was indebted to the defendant in said sum for additional discounts to which the defendant was entitled under its contract with the complainant. There is a stipulation contained in the record, by which it was agreed that the account of the Cadillac Motor Car Company against the Southern Motor Company, in the sum of $965.04, was the correct amount of the account. It was likewise stipulated that in the event Southern Motor Company had any just claim against the Cadillac Motor Car Company for the alleged additional discount, the claim would amount to $2195.-88. Hence there is no controversy as to the correctness of the account of complainant, and there is no controversy as to the amount of the claim of the defendant in the event its claim for additional discount is sustained.

The answer of the defendant set up by way of cross-bill that it was entitled to receive of complainant an additional discount of one per cent, on the theory that under the terms of the contract it was to receive this additional discount in the event it sold as many or more than one hundred automobiles bought from the complainant during the twelve months period, and that it had actually bought and paid for eighty-eight automobiles and had ordered five additional automobiles which were then in transit, and shipped by the complainant to the defendant. The defendant further alleged in its answer and cross-bill that it had ordered eight additional automobiles of the new model V-63, and that complainant refused to ship said additional eight automobiles of the new model; that if the thirteen additional automobiles had been shipped as requested by cross-complainant that the total number of automobiles would have been 101 for the year, and would have entitled cross-complainant to the addi-

tional discount of one per cent. The answer and cross-bill did not deny that the account which complainant had against it was correct, but by way of cross-bill sought to recover the difference between complainant's account and the amount of additional discount which cross-complainant claimed to be entitled to receive under its dealers sales contract.

At the hearing of the cause the Chancellor found the facts in favor of the contention of cross-complainant and decreed a judgment in favor of cross-complainant, Southern Motor Company, and against cross-defendant Cadillac Motor Car Company, for the amount of the stipulated sum of $2,195.88, representing the additional one- per cent extra quantity discount, less the sum of $965.04, the amount of cross-defendant's account, leaving the sum of $1,230.85. From this decree the original complainant, Cadillac Motor Car Company, prayed and was granted an appeal to this court and has assigned errors.

The record contains a very full finding of the facts by the Chancellor. We have carefully examined the evidence contained in the transcript of the record, and fully concur in the finding of the facts as found by the Chancellor, and for the purpose of disposing of the questions made on this appeal we adopt the finding of the facts by the Chancellor, which are as follows:

"(1)  Defendant is indebted to complainant in the sum of $965.-04, for goods and merchandise purchased. This indebtedness is not disputed in the evidence.

"(2)  On defendant's cross-bill, the following facts appear. On January 2, 1923, a written contract was made and entered into by and between complainant and defendant covering the sale and distribution by the latter of automobiles manufactured by the former. Under paragraph six of said agreement it was provided: '(6) Seller agrees that for so long a time as distributor shall continue to sell new Cadillac automobiles chassis, parts and accessories in a manner and to an extent and quantity as satisfactory to seller and while this agreement shall be and remain in effect no other or different person, firm or corporation will be granted the privilege of selling same products in the aforesaid territory' etc.

"Under paragraph 4 of said contract it is provided:

" '(4)  This agreement shall continue in force and govern all relations and transactions between the parties hereto until cancelled or terminated. Either party may cancel or terminate this agreement at any time with or without cause, provided the party desiring to so terminate and cancel the same gives unto the other a written notice (by registered mail or other means of delivery) of such intention at least thirty days prior to the date of such proposed termination and cancellation.'

"And in paragraph 20 of said contract it is provided:

" '(20)   This agreement constitutes a personal contract; and distributor shall not transfer or assign same or any part thereof without seller's written consent.'

"(2)   On the same day that the above-mentioned contract was made, the parties thereto executed a written contract characterized as 'Appendix' to original contract.  This appendix is referred to in the original contract and made a part thereof.  Said appendix among other things, specifically means the territory in which defendant shall have the exclusive rights to sell complainant's automobiles and goods, and sets forth a schedule of list prices, initial billing freight charges, cost of handling and Federal war tax on the different models of automobiles.  It is then stipulated as follows:

" 'Provided distributor does not violate any of the promises of this agreement, (including appendix) and same is not cancelled for cause, seller will credit the account of or pay to distributor, monthly as earned, the following "extra quantity discounts" based on the extra initial billings, prices previously paid by distributor for all cars shipped during the calendar year under this agreement:

" '1 - 20 automobiles or chassis nothing 81-100 auto. or chas. 4%
" '21-40 automobiles or chassis 1%      101-200 auto. or chas. 5%
" '41-60 automobiles or chassis 2%      201-300 auto. or chas. 6%
" '61-80 automobiles or chassis 3%  301-Av. of auto. or chas. 7%'

"(3)   On September 5, 1923, defendant sold and transferred by written bill of sale to J. N. Walker and R. R. Price all of its automobiles, parts, accessories, office furniture and fixtures, stock, garage equipment, tools and service truck now used in connection with the Cadillac Automobile Agency in the building at the southwest corner of Monroe and Lauderdale streets, Memphis, Tennessee, also the present lease and all options and concessions for the renewal of the lease on said building, a membership in the Memphis Dealers Association, transferred to the said J. N. Walker and R. R. Price, or said person or corporation as they may designate free of cost.  This sale and transfer is to be considered to become effective September 4, 1923, etc.

"S. H. Butler was president of the defendant company and R. R. Price was its secretary.  It appears that J. N. Walker and R. R. Price organized a new corporation, the Southern Motor Car Company, hereinafter referred to as the new company, and it became the owner of the assets purchased by them from the Southern Motor Company, hereinafter referred to as the old company.

It was understood between S. H. Butler and J. H. Walker and R. R. Price that they were to take over the agency of the Cadillac automobile.  The physical assets purchased would have been of no particular value to them without the agency.  They would not have made the purchase if the old company was to have the right to sell Cadillac cars.  Butler was anxious to get out of the agency.  The

Cadillac Motor Car Company was willing for the purchasers to have the agency, if they and Butler, acting for the old company, could get together on a trade. The negotiations looking to a sale of the physical assets by the old company to Price and Walker extended over a period of at least several weeks. Complainant was cognizant of the negotiations, and its representative, Mr. Greenwell, was in Memphis the latter part of August, 1923, and was present at conferences between Butler and Price. Without a doubt, Butler knew that an essential part of any sale of the physical assets of the old company to Price and Walker contemplated to transfer of the Cadillac agency to them, and in making such a sale he consented to the transfer of such agency. Butler knew that under the contract the old company had with the factory it had the exclusive agency in this territory, and that Price or his new company could not be granted the agency, within the same territory until the contract with the old company was terminated or modified.

"On October 12, 1923, complainant formally notified defendant, the old company, of the cancellation of its contract. Thirty days notice was not given. The new company was appointed agent. This change of agency was, in effect, on the invitation of Butler, representing the old company. He owed the duty and obligation to Price to see that the agency was transferred to Price, or the new company. The notice of cancellation was unnecessary and is unimportant. In effect complainant was but consenting to the assignment of the contract by the old company to the new company.

"(4)   At the time of the sale of the physical assets of the old company to the new company, the old company had purchased from complainant ninety-three cars, of that, eighty-eight had been delivered to the old company and five were in transit to it. Prominent in Butler's mind was the question of the one per cent extra quantity discount that the old company would be entitled to if the whole number of cars purchased by it, during the year 1923, exceeded 100. From the schedule, set forth in paragraph 2 thereof, it will be observed that the old company by purchasing more than eighty automobiles had become entitled to a discount of four per cent. If it could exceed 100 cars it would be entitled to a discount of five per cent on the whole 100, and thus gain one per cent advantage in the whole number of cars already purchased. In this situation, when complainants representative was in Memphis, in the latter part of August, 1923, and prior to the sale to Price, but while negotiations for a sale were on, Butler stated to Greenwell, complainant's agent, that he would take on eight automobiles to make out the specific number to get the additional discount. Greenwell was willing that this should be done, provided Butler would take old model cars. Butler said he would not have them and would not take them, but that he would take new

cars.  Here let me say that the complainant was beginning to get out a new model, known as V-63.  The former model was known as V-61.  Miss Lowry, Butlers secretary, heard this conversation, Mr. Greenwell admits having a conversation with Butler, with reference to the purchase of additional cars.  He states recalling that he agreed if Butler took immediately, in old model cars that were then in production, the necessary number to make 101 cars to allow him one per cent bonus on 101 cars.  He says he does not recall that Butler offered to take the necessary additional cars provided they were furnished him in the V-63 type.  Butler and Miss Lowry are clear about the offer to take the eight additional cars.  Greenwell simply does not remember it.  I hold the fact to be that this offer was made by Butler and that Greenwell refused unless the cars were taken in the old model.  Now, at this time, no sale of the physical assets of the old company had been made.  It is true that negotiations for a sale were on, but, as a matter of fact, it was entirely possible that no sale would result.  The old company was still the agent of the complainant.  The contract was still alive and effective.  Nowhere in the contract is complainant given the right to dictate what type of automobiles should be furnished by the old company to make up the number to entitle it to a quantity discount.  At the time of Butlers offer he had the right to buy eight new type cars and thereby entitle the old company to an additional quantity discount of one per cent on 101 cars.  I am of the opinion that under the facts, the old company is entitled to an additional one per cent discount on the eighty-eight cars actually delivered to it.  This amount to $2,195.88.

"I say eighty-eight cars, because the five in transit at the time of sale were delivered to the new company.  Subsequently, and before the end of the year, 1923, the new company took more than enough cars to make up the total by the old and new companies, more than 101 cars.  The complainant allowed to the new company the one per cent quantity discount on the additional cars purchased by it from the complainant, but refused to pay the old company on the eighty-eight cars sold by it to the new company, while allowing the new company to connect the eighty-eight cars in making up the total of more than 101 cars, it paid discount to the new company only on the excess over the eighty-eight purchased direct from the factory.''

Upon these facts the Chancellor based his opinion and conclusion that the cross-complainant was entitled to recover the amount decreed it.

We do not deem it necessary to discuss the several assignments of error separately, as several of the assignments of error go to the same question.  The learned Chancellor held that Butler, representing the old company, made the offer to purchase the eight additional

automobiles, and that this offer to purchase these additional cars was made prior to the sale of the physical assets of the old company to the new company, but the negotiations had not proceeded to the point that the sale had been made and the dealers agency contract transferred. The Chancellor further held that the old company was still the agent of the complainant, and that the contract was still alive and in force between the complainant and the old company at the time Butler, representing the old company, made the offer to Greenwell, representing the complainant. In this holding, we think the Chancellor was correct, and that his holding on that question is supported by the facts.

Among other contentions made by appellant on this appeal, is that appellant was not required by any provision of the contract to furnish the appellee any stated number of automobiles, and that this is a matter that was to be provided in the appendix to the contract, and that the appendix to the contract failed to make any provision with reference to the number of automobiles that would be distributed or furnished to appellee.

We think the fair and proper inference to be drawn from the contract and the appendix combined would entitle the appellee to have the appellant ship to it any number of automobiles that appellee may order and that appellant could fill without discriminating against other dealers. It is not insisted that appellant refused to ship the eight additional automobiles of the new model type, because the factory production would not warrant the shipment, or because the account of appellee would not warrant the shipment. If it appeared that appellant refused to accept the offer of appellee to purchase the eight additional automobiles of the new model type, and to ship the same on the grounds that the appellant could not, because of limited factory production of the new type or model, furnish these eight additional automobiles without discriminating against other of its dealers, we think it would have been excused. But such are not the facts as we understand the record. In fact the record does not disclose in a very definite way just why appellant declined to accept the order of appellee for these additional automobiles, unless appellee would take the old model cars. However, we think it clearly appears in the record, that when appellee made known, through its Mr. Butler, to Mr. Greenwell, the representative of appellant, that he was placing the order for the additional cars, or rather making the offer to buy the additional cars, he was doing so in order to bring the total number of cars up to 101 for the year so as to entitle appellee to the extra quantity discount of one per cent on the entire number of cars purchased for the year, and that Mr. Greenwell declined to accept the offer for the purchase of the additional number of cars of the new model, because he knew that when the new company concluded the negotiations and took over the assets of the old company, includ-

ing such automobiles as the old company had on hand, that the new company would not accept the old model cars, and that therefore the old company could not and would not take old model cars in order to make up the 101 cars that would entitle it to the extra quantity discount.

We think that appellant, being in a position to withhold its consent to the transfer of the dealers agency from the old company to the new company, was seeking to save this additional one per cent. Mr. Greenwell had been made fully acquainted with all the negotiations pending between the old company and the new company with reference to a sale of all the physical assets by the old company to the new company. He had expressed his acquiescence to the arrangement, and it was understood between the parties that the new company, upon a completion of its organization and incorporation, would become the successor as the dealer for appellant, and would succeed the old company as the Memphis dealer of appellant. It was evidently in the minds of Mr. Butler, and also Mr. Price who was to be interested with the new company, and was already interested with the old company, that by buying the eight additional automobiles, in addition to the five new model cars previously bought and then in transit, it would bring the total number to 101 and in this way appellee would be entitled to receive the extra quantity discount of one per cent. Mr. Greenwell, declined to accept the offer for the purchase of the eight additional cars of the new model type, V-63, because he realized that by doing so the appellee would be entitled to the additional one per cent on all the cars purchased during the year. He also knew that neither the old or new company would invest in the purchase of eight old model, or V-61 type of car, and that by offering to ship the old company the old model, or V-61 type, that he could in that way circumvent the plan which Butler and Price evidently had in mind to obtain this additional one per cent extra quantity discount.

It is also insisted by appellant that this offer to buy did not constitute a sale, and was not in fact an order, and that unless there had been an actual purchase by the old company of 101 cars for the year, that the additional one per cent extra quantity discount would not apply. It is also the contention of appellant that it had the right to refuse its consent to the transfer of the Memphis agency, and that it had the right to state the terms and conditions upon which it would give its assent to the transfer, and that the matter of this additional one per cent was gone into fully between all the parties, and that appellant refused to give its assent to the transfer except on the condition that the additional one per cent would not apply.

We have examined the record carefully, and fail to find that the appellant withheld its consent to the new company becoming the

successors of the old company as the Memphis dealer for appellant. It is true that appellant denied liability to the old company for the additional one per cent, as evidenced by the telegrams and telephone communications passing between the parties.

However, there was nothing in these communications that indicated that appellant would withhold its consent to the transaction by which the new company would succeed the old company as its Memphis dealer, and the only question made in these communications was with reference to the right of the old company to collect the additional one per cent, or the right of the new company by taking the requisite number of cars in addition to the eighty-eight bought and paid for by the old company to obtain the one per cent extra quantity discount. The appellant did not agree to either of these propositions, and within the twelve months period the new company actually bought a sufficient number of the cars added to the eighty-eight bought by the old company to make the total number more than 100, and appellant only paid to the new company the rate of quantity discount applying to the cars bought by the new company, and hence the additional one per cent was not paid to either the old company or the new company on the eighty-eight cars purchased and paid for by the old company. On the question made by appellant that the offer to purchase the eight additional cars did not constitute a contract, nor was it in fact an order for any particular type, or the V-63 model of cars, and therefore, the refusal of appellant to accept the offer did not constitute a breach of the contract. We do not think this contention can be sustained. If we are correct in our analysis and construction of the contract as hereinbefore stated, then the appellant was legally and morally obligated to ship any number of cars that its Memphis dealer, the old company, may order during the twelve months period, provided the factory capacity and a fair distribution among dealers of appellant would warrant the shipments. We are also of the opinion that the old company, at any time prior to the cancellation of the contract, or prior to the transfer of the agency from the old company to the new company, would be entitled to have the appellant accept its order and ship such additional cars as appellant may order, subject to the conditions as above set forth, and in so doing would have the right to have the appellant ship the new model cars, and not the old model. The old models became in a sense obsolete when the factory began making the new models. Purchasers of automobiles would want the latest models, and it would be difficult, if not impossible, to sell the old model cars at the standard price for new cars. The factory could not therefore expect to have one of its dealers accept the old model type of car, if it had and was in a position to ship the new model or type of car. We are also of the opinion that the old company in making the offer which it

did make, through its Mr. Butler, to purchase the additional number of automobiles, was acting within its rights, and that this offer having been made to Mr. Greenwell, the authorized agent of appellant, was, in effect, an order and if it had been accepted by Mr. Greenwell, the kinds of the new models manufactured by appellants would have been specified. Appellee knew that these additional cars would be taken over by the new company at the price and cost to the old company, and the offer to purchase was therefore genuine and bona fide. We are of the opinion that the Chancellor correctly held that this amounted to an order for this number of additional cars, and that the appellant was not legally warranted in refusing to accept the offer. We think it fairly inferable from the whole record that if the negotiations had not been pending between the old and new company, that appellant would have shipped to appellee all the automobiles it desired to purchase under its contract within the capacity of appellant to furnish the cars without discriminating against other dealers in the distribution of its factory output. It did ship to the new company as many or more automobiles of the new type as the old company tried to purchase.

We find no error in the decree of the Chancellor. All assignments of error are overruled and the decree of the Chancellor is affirmed. Appellant and sureties on the appeal bond will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.